IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHAEL CLARK,

       Plaintiff,

v.                                                                 CV 11-00830 WPL/CG

TOWN OF MESILLA, NEW MEXICO;
Town of Mesilla Board of Trustees,
Mesilla Marshall Department, Chief Marshall
ANGELO VEGA, in his individual and official
capacities, Investigator JEFF GRAY in his
individual and official capacities,

       Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before me on Defendants Angelo Vega and Jeff Gray's Motion for Summary Judgment (Doc. 31). The central issues here are whether probable cause existed for Vega and Gray to arrest Plaintiff Michael Clark and, if not, whether this arrest constitutes the violation of a clearly established constitutional right. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to have me serve as the presiding judge, resolve dispositive matters, and enter a final judgment. Having reviewed this motion, Clark's response (Doc. 41), Vega and Gray's reply (Doc. 47), and the relevant law, I conclude that Clark's arrest was supported by probable cause and did not constitute a violation of a clearly established constitutional right. Therefore, I grant Vega and Gray's Motion for Summary Judgment.

## FACTUAL AND PROCEDURAL HISTORY[1]

On September 16, 2008, Clark visited the home of Josetta Leyva, a woman with whom he had been romantically involved for several years prior to the events in question. (Doc. 32 at 2.) According to Clark's complaint, Leyva invited him via telephone to visit her home on September 16. (Doc. 1 at 4.) After he arrived, Clark and Leyva engaged in sexual intercourse. (Doc. 32 at 2.) Clark states in his complaint that Leyva called him and sent him several text messages after they finished having sex and he left her home to go to work. (Doc. 1 at 4.)

Shortly after the events in question, a deputy from the Town of Mesilla Marshal's Department ("MMD") was sent to Leyva's home on a complaint of sexual assault against Leyva. (Doc. 32 at 2.) Leyva told the deputy that she had engaged in sexual intercourse with Clark against her will. (*Id.*) Gray, an investigator with MMD at the time, was called to the scene, and Leyva repeated these statements to him. (*Id.*) While interviewing Leyva and collecting evidence at her home, Gray observed and documented physical marks on her arm that he felt were inconsistent with consensual sex. (*Id.* at 2-3.) Gray collected other evidence at Leyva's home, including clothing, a sock, and photographs that Gray took of Leyva and her residence. (Doc. 41 Ex. 1 at 2.)

At some point after Gray finished his investigation at Leyva's home, he traveled to Southern New Mexico Correctional Facility ("SNMCF"), where Clark worked. (Doc. 32 at 3.) Accompanying Gray was Vega, a marshal with MMD. (*Id.* at 2, 3.) Gray had decided to arrest Clark at that point even though the results of a forensic examination of Leyva were not yet available. (Doc. 41 Ex. 2 at 4, 6.) Shortly after midnight on September 17, 2008, Clark was called into the office of SNMCF's warden, where he was interviewed by Vega and Gray with

---

[1] Unless otherwise indicated, the facts described herein are not in dispute.

respect to the events of the previous day. (*Id.*; Doc. 32 at 3). During the interview, Clark disputed the allegations of sexual assault, and he told Gray that his cell phone records could support this denial. (Doc. 41 Ex. 2 at 5.) He also told Gray that Leyva had contacted him at SNMCF several times after the event in question in an attempt to have him reconcile with her. (Doc. 41 Ex. 1 at 2.) Following the interview, Gray arrested Clark. (Doc. 32 at 3.) The District Attorney's office subsequently dismissed the charges against Clark. (Doc. 41 Ex. 1 at 2.)

Clark filed a complaint pursuant to 42 U.S.C. § 1983, alleging violations of his Fourth and Fourteenth Amendment rights. (Doc. 1 at 2.) Count I alleges that Vega and Gray initiated prosecution against Clark without probable cause, thereby committing malicious prosecution. (*Id.* at 8-9.) Count II alleges that Clark was denied due process by Vega and Gray when they arrested him without first thoroughly investigating the allegations against him. (*Id.* at 9-11.)[2]

This matter is now before me on Vega and Gray's Motion for Summary Judgment, in which Vega and Gray claim qualified immunity as an affirmative defense to Counts I and II. (Doc. 32 at 5.)

## STANDARD OF REVIEW

Summary judgment is generally appropriate where the pleadings, discovery materials, and affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit, and the dispute is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citations omitted).

---

[2] Count III, alleging inadequate hiring procedures by the Town of Mesilla, is directed at the Town alone and is not challenged by Vega and Gray.

When a motion for summary judgment raises a question of qualified immunity, an extra step is added before considering whether there exists a genuine dispute of material fact. *See Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Id.* "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he . . . is entitled to judgment as a matter of law." *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008) (internal quotation marks omitted).

In determining whether a plaintiff meets this two-part test, I must "construe the facts in the light most favorable to the plaintiff as the nonmoving party." *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)). I may neither make credibility determinations nor weigh the evidence at this stage. *Gossett v. Oklahoma*, 245 F.3d 1172, 1175 (10th Cir. 2001) (quotation omitted). "However, because at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record . . . ." *Thomson*, 584 F.3d at 1312.

## DISCUSSION

"Qualified immunity shields public officials 'from undue interference with their duties and from potentially disabling threats of liability.'" *Wilkins v. DeReyes*, 528 F.3d 790 (10th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). However, a defense of qualified immunity will not succeed where the plaintiff establishes that the defendants violated a clearly established constitutional right. *Id.* Here, Clark alleges that Vega and Gray violated the Fourth

4

Amendment by engaging in malicious prosecution. Clark also alleges that Vega and Gray violated his Fifth Amendment right to due process of law.

## I. Was a Constitutional Right Violated?

Section 1983 of Title 42 of the United States Code creates a right of action for violations of the United States Constitution. A claim of malicious prosecution, in turn, may be premised on the Fourth Amendment right to be free from unreasonable seizures. *See Wilkins*, 526 F.3d at 797. Thus, where a plaintiff asserts facts meeting the elements of a § 1983 malicious prosecution claim, that plaintiff has established the violation of a constitutional right for purposes of defeating a defendant's claim of qualified immunity. *See id.*

In the Tenth Circuit, to establish a § 1983 malicious prosecution claim, a plaintiff must demonstrate that "(1) the defendant[s] caused the plaintiff's continued confinement or prosecution; (2) some original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant[s] acted with malice; and (5) the plaintiff sustained damages." *Id.* at 799. Here, both sides agree that the question of qualified immunity hinges on the third element, whether Gray had probable cause to arrest Clark. (Doc. 32 at 3; Doc. 41 Ex. 1 at 2.)

### A. Establishing Probable Cause

"Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1068 (10th Cir. 2005) (quoting *Jones v. City & Cnty. of Denver*, 854 F.2d 1206, 1210 (10th Cir. 1988)); *see also Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996). The existence of probable cause justifying an arrest depends on the totality of

the circumstances under which the arrest occurs. *See Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). Whether a person is later acquitted of the crime for which he is arrested, or whether charges are eventually dropped against that person, is irrelevant to the determination of probable cause at the time of arrest. *Michigan v. DeFillippino*, 443 U.S. 31, 36 (1979).

When seeking to determine whether probable cause existed at the relevant point in time, the test is an objective one; "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). Thus, if a reasonable officer, knowing what Vega and Gray knew at the time of Clark's arrest, could have believed that probable cause existed to justify the arrest, Vega and Gray will be entitled to qualified immunity. *See York v. Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008).

A finding of probable cause can be based on an uncorroborated statement of a single witness or purported victim. *See, e.g.*, *United States v. Patane*, 304 F.3d 1013, 1016-17 (10th Cir. 2002) (rejecting the suggestion that the statements of victims of domestic violence are insufficiently reliable to establish probable cause without independent corroboration), *rev'd on other grounds*, 542 U.S. 630 (2004). Such statements will generally suffice to establish probable cause unless there are facts known to the officer that would lead him to be suspicious of the credibility of the witness/victim or her claim. *See Munday v. Johnson*, 257 F. App'x 126, 131 (10th Cir. 2007) (unpublished) (observing that "absent special circumstances suggesting that a victim-witness is not credible, corroboration [of her statement] is not essential" to establish probable cause); *see also Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 743 (7th Cir. 2003); *United States v. Blount*, 123 F.3d 831, 835 (5th Cir. 1997); *United States v. Torres-Castro*, 374 F. Supp. 2d 994, 1010 (D.N.M. 2005) ("The Court ordinarily assumes the crime victim's . . . veracity in making determinations of . . . probable cause.").

As Clark observes, police officers have a duty to pursue "[r]easonable avenues of investigation" in determining whether a crime has been committed. *BeVier v. Hucal*, 806 F.2d 123, 127-28 (7th Cir. 1986). Hallmarks of a reasonable investigation can include "reasonable effort[s] to interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of a warrantless arrest and detention." *See Torres-Castro*, 374 F. Supp. 2d at 1010-11. When confronted with "facts that would help clarify the circumstances of an arrest," a police officer cannot ignore such facts. *BeVier*, 806 F.2d at 127-28. However, "[o]nce probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999); *see also BeVier*, 806 F.2d at 127 n.1 (recognizing that "there is no general duty to investigate further after acquiring information sufficient to establish probable cause" (citation omitted)).

A police officer may nonetheless choose to continue his investigation after establishing probable cause by interviewing the person accused of a crime. Still, if a reasonable officer believes that probable cause to arrest has already been established at the time of the interview, he does not need to fully investigate the accused's claims of innocence before arresting him. *See Wolford*, 78 F.3d at 489 (noting that when sufficient facts justify a finding of probable cause, "allegedly exculpatory facts cited by [a] plaintiff" need not vitiate such a finding); *see also Spiegel v. Cortese*, 196 F.3d 717, 724-25 (7th Cir. 1999) ("[T]he law does not require that a police officer conduct an incredibly detailed investigation at the probable cause stage."); *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997).

*B. Clark's Arrest*

Based on the undisputed facts available in the record, I find that a reasonable officer, knowing what Gray and Vega knew at the time of Clark's arrest, could have believed that sufficient probable cause existed to justify the arrest. When Clark was arrested, Gray had taken a statement directly from Leyva at her home, the scene of the alleged crime. This sort of inculpatory statement from the purported victim would generally suffice on its own to establish probable cause. *See Munday*, 257 F. App'x at 131. However, Gray's further investigation also resulted in the observation of physical marks on Leyva's arm that, in his opinion, were not consistent with consensual sexual intercourse. Given that Gray had interviewed the one witness "readily available at the scene" and had "investigate[d] basic evidence" that a reasonable officer could have felt corroborated Leyva's statement, *see Torres-Castro*, 374 F. Supp. 2d at 1010-11, I cannot conclude that Gray and Vega failed to conduct a proper investigation before deciding that probable cause had been established.

Clark objects to the fact that Gray had already decided to arrest Clark prior to speaking with him. However, once probable cause had been established based on the statement of the purported victim and the marks on her arm, no further investigation was necessary. *See Ahlers*, 188 F.3d at 371. Nor were Gray and Vega required to change their determination that probable cause existed simply because Clark stated that Leyva had contacted him several times before and after the alleged assault. After all, a reasonable officer could conclude that records of this contact might be irrelevant as to whether a crime had been committed. *See Wolford*, 78 F.3d at 489.

Although Clark cites *Cortez v. McCauley*, 478 F.3d 1108 (10th Cir. 2007), to contend that Gray and Vega did not conduct a sufficient investigation before arresting him, that case is distinguishable from the facts here. In *Cortez,* a two-year-old girl allegedly told her mother that

8

her babysitter's boyfriend had sexually assaulted her; the mother, in turn, allegedly shared this information with a hospital nurse; the nurse, in turn, reported this to the police. *Id.* at 1113. Without speaking to the child or her mother, waiting for the results of a medical examination, or seeking to obtain a warrant, the defendant police officers decided to arrest the babysitter's boyfriend. *Id.* The Tenth Circuit affirmed the denial of summary judgment on qualified-immunity grounds, observing that "unsubstantiated double-hearsay originating from a two-year-old, standing alone, does not give rise to probable cause," particularly in light of the fact that the one person that police spoke to was not a witness to the alleged crime and had no personal knowledge of the alleged abuse. *Id.* at 1118, 1119 n.13.

In this instance, by contrast, Gray spoke directly to the putative victim, an adult woman who undeniably would have had firsthand knowledge of any crime committed. Gray also investigated Leyva's body, concluding that marks on her arm were not consistent with consensual sex. Gray and Vega relied on the fruits of this investigation in determining whether probable cause existed to support Clark's arrest. *Cf. id.* at 1117-18 (noting that the defendants in *Cortez* did not interview any alleged victims or witnesses or inspect clothing for signs of assault; "[i]nstead, the Defendants relied on the flimsiest of information conveyed by a telephone call."). Therefore, *Cortez* does not support the argument that Gray and Vega did not sufficiently investigate the circumstances here.

Clark also refers to language in *Cortez* noting that this circuit "ha[s] previously held that a bare allegation of wrongdoing, *without any investigation, in some circumstances*, may not give rise to probable cause." 478 F.3d at 1119 (emphasis added). The Tenth Circuit in *Cortez* points to two such holdings in particular. In the first case, *Baptiste v. J.C. Penney Co.*, the court denied qualified immunity to officers who relied entirely on the statements of store security guards to

9

establish probable cause for an arrest, ignoring readily-available video footage that refuted the guards' allegations of shoplifting. *See id.* (citing 147 F.3d 1252, 1256-57 (10th Cir. 1998)). However, unlike the facts in *Baptiste*, neither party in this action contends that video footage of the alleged crime was available. Although Clark asserts in his complaint that Leyva contacted him via phone and text message seeking reconciliation after the events in question, such records are not the functional equivalent of video footage that can directly and unambiguously refute the purported victim's version of events. Additionally, there is nothing in the record before me to indicate that the sexual encounter between Clark and Leyva was a subject of the calls or text messages, or that Clark ever gave Gray or Vega any reason to believe that it was. Whereas the video in *Baptiste* was undisputedly focused on the conduct in question, there is no evidence that Gray or Vega had any reason to believe that the subject matter of Leyva's communication with Clark was relevant to the events alleged.

In *United States v. Shaw*, the second case referred to by the Tenth Circuit in *Cortez*, the court denied qualified immunity to officers who simply relied on the hearsay statements of the mother of an alleged child victim to find probable cause for arrest, without speaking to the victim himself or going to any other trouble to corroborate the mother's allegations. *See id.* (citing 464 F.3d 1108, 1119 (10th Cir. 2007)). In this case, however, one of the police officers here spoke directly with the alleged victim. Further, unlike both *Baptiste* and *Shaw*, there were no other witnesses at the alleged crime scene that Gray could have interviewed prior to arresting Clark. Finally, it is undisputed that Gray gathered and relied on more evidence than just Leyva's "bare allegation of wrongdoing" before determining that probable cause existed. Accordingly, I find that the facts in this case are distinguishable from those in *Baptiste* and *Shaw*, and that these are

not circumstances where the officers inappropriately found probable cause based on "a bare allegation of wrongdoing[] without any investigation." *See Cortez*, 478 F.3d at 1119.

Based on the foregoing discussion, I find that a reasonable officer could have believed that probable cause existed to support Clark's arrest at the time of the arrest. Accordingly, I find that Clark's constitutional rights were not violated when he was arrested. Therefore, Gray and Vega are entitled to qualified immunity with respect to Counts I and II.

**II.     Was the Constitutional Right Clearly Established?**

Even assuming *arguendo* that the arrest of Clark, based on an allegation by the putative victim and Vega and Gray's further investigations, violated Clark's Fourth Amendment rights, Gray and Vega would nonetheless be entitled to qualified immunity if Clark cannot show that his rights were clearly established. Courts in the Tenth Circuit use an objective test to determine whether a right is "clearly established" – that is, we must ask "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Stearns v. Clarkson*, 615 F.3d 1278, 1282 (10th Cir. 2010).

Based on the caselaw discussed in the preceding section, I conclude that even if Vega and Gray's conduct amounted to a violation of a constitutional right, such conduct did not amount to a clear constitutional violation. Courts in this district and this circuit have concluded that probable cause may be established, at least in some circumstances, by a statement to the police by a single witness or victim. *See Munday*, 257 F. App'x at 131; *Torres-Castro*, 374 F. Supp. 2d at 1010. Other circuits have reached the same conclusion. *See, e.g.*, *Beauchamp*, 320 F.3d at 743 (Seventh Circuit); *Blount*, 123 F.3d at 835 (Fifth Circuit). Decisions that have found probable cause to be lacking, on the other hand, have premised this conclusion on very different facts than those found here. *See, e.g.*, *Cortez*, 478 F.3d at 1122 (rejecting qualified immunity because the

11

law clearly established that "double-hearsay" alone could not support probable cause). I therefore find that it would not be clear to a reasonable officer in Vega and Gray's shoes that their conduct was unlawful. Consequently, Clark has not established a clear violation of a constitutional right, and Gray and Vega are thus entitled to qualified immunity.

## CONCLUSION

Clark has not shown that Vega and Gray arrested him without probable cause, and thus he has not shown that they violated his clearly established constitutional rights. Therefore, Vega and Gray are entitled to qualified immunity with respect to Count I (malicious prosecution) and Count II (denial of due process). Accordingly, Vega and Gray's Motion for Summary Judgment is granted, and I enter judgment in favor of them with respect to Counts I and II.

IT IS SO ORDERED.

_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.